UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ROMANY GHALI,

                              Plaintiff,

          - against -

WAL-MART STORES EAST, LP,

                              Defendant.
-------------------------------------------------------------------x

**OPINION & ORDER**

No. 18-CV-2495 (CS)

Appearances

Julie S. Raphael
Sobo & Sobo, LLP
Middletown, New York
*Counsel for Plaintiff*

Patricia A. O'Connor
Brody, O'Connor & O'Connor
Northport, New York
*Counsel for Defendant*

Seibel, J.

    Before the Court is the motion for summary judgment of Defendant Wal-Mart Stores East, LP ("Wal-Mart"). (Doc. 15.)

## I. BACKGROUND

    The following facts are taken from the parties' Local Rule 56.1 Statements and supporting materials and are undisputed unless otherwise noted.

### A. Facts

    On December 1, 2015, Plaintiff Romany Ghali picked up his seven-year-old son "T.G."[1] from school and the two drove to the Wal-Mart store located in Monroe, New York. (P's 56.1

---

[1] The parties initially agreed that T.G. was seven years old at the time of the accident, (Doc. 22 "P's 56.1 Resp.") ¶ 4), but Defendant later stated that T.G. was only six, (Doc. 24 ("D's Reply") at 2 n.1). This fact dispute is not material.

1

Resp. ¶¶ 1, 4; Doc. 21-1 ("Ghali Aff.") ¶¶ 8, 10.) It is not clear at what time Plaintiff picked up his son because although Plaintiff testified that it was approximately 6:00 p.m., (Ghali Aff. ¶ 8), Wal-Mart's surveillance video from December 1, 2015, shows that they arrived at Wal-Mart at 5:49:54 p.m., (Doc. 15 ("O'Connor Aff.") Ex. I ("Surveillance Video") at 5:49:54 PM).[2] It was raining when Plaintiff picked up his son, and it continued to rain as they entered Wal-Mart. (P's 56.1 Resp. ¶ 5; Ghali Aff. ¶¶ 9-10.) They entered through an area in the front of the store, which the parties refer to as the vestibule. (Ghali Aff. ¶ 11.) Plaintiff says that there were "dripping wet" shopping carts in the vestibule. (*Id.* ¶ 12.) Just inside the door was a rectangular mat that was fifteen to twenty feet long and three to four feet wide. (P's 56.1 Resp. ¶ 6.) Plaintiff and his son walked into the store at an angle. (Surveillance Video at 5:49:51 PM.) Plaintiff took two steps on the mat, which he describes as "saturated" with water,[3] (Ghali Aff. ¶ 13), and then

---

[2] Neither party has suggested that the time stamp on the video is incorrect.

[3] Defendant argues that Plaintiff's claim that the mat he stepped on was saturated with water should be disregarded under the "sham issue of fact" doctrine because the claim contradicts Plaintiff's deposition. (D's Reply at 2.) "[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Quiles v. City of N.Y.*, 978 F. Supp. 2d 374, 381 (S.D.N.Y. 2013) (internal quotation marks omitted); *see Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 455 (2d Cir. 1999) ("It is beyond cavil that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that contradicts the affiant's previous deposition testimony.") (alteration and internal quotation marks omitted). At his deposition, Plaintiff was asked, "Was the mat at all involved in your accident?" and Plaintiff replied, "No." (O'Connor Aff. Ex. E ("Ghali Test.") at 18:5-7.) Plaintiff's affidavit states that, "As I walked on the mat, it squished beneath my feet and water leaked from it. The mat seemed to have been saturated beyond the point that it could no longer retain water." (Ghali Aff. ¶ 13.) I do not find that these statements are contradictory and therefore will not preclude Plaintiff's statement about the mat being saturated with water. *See Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000). ("[T]he [sham issue of fact doctrine] does not apply if the deposition and the later sworn statement are not actually contradictory."). If Plaintiff had testified at his deposition that "the mat was not saturated with water," or even that he could not remember whether the mat was saturated with water, I would have found the statement in the affidavit contradictory and precluded it. But Plaintiff can say both that the mat was not involved with the accident and that the mat was saturated with water without contradicting himself. If Plaintiff's

2

stepped off of the mat and fell to the floor, (Surveillance Video at 5:49:51-54 PM). Plaintiff testified that his hand and bottom hit the floor when he fell, that his pants were wet, and that he could feel the water on his underwear. (Ghali Test. at 19:23-20:17.) Plaintiff's accident occurred at 5:49:54 p.m. (Surveillance Video at 5:49:54 PM.)

After his fall, Plaintiff observed spots of water on the floor that were a quarter-inch deep with a "radius maybe of five, six inches." (Ghali Test. at 21:81-15.) Plaintiff did not remember if he had seen the wet floor before he slipped, (*id.* at 19:11-14), but once he fell, the floor was wet enough that Plaintiff could see footprints, (*id.* at 22:21-23:4; Ghali Aff. ¶ 16). Plaintiff did not make any determination as to how the spots came to be on the floor or how long they were there. (P's 56.1 Resp. ¶¶ 11-12.) Plaintiff testified that a Wal-Mart employee talked about putting up signs after he fell. (Ghali Test. at 25:2-11.)

Michele Varona, an assistant manager at Wal-Mart,[4] testified that Defendant's inclement weather policy included the placement of mats and a floor blower in the store's vestibule. (P's 56.1 Resp. ¶¶ 15-16.) Plaintiff identified a floor blower in the store's vestibule from a still shot of the surveillance video but could not remember whether it was running at the time of the accident. (*Id.* ¶ 14.) Defendant's accident reports indicate that it was raining at the time of the

---

implication is that the water on which he fell was squeezed from the saturated mat by his footsteps, however, that would contradict his deposition testimony and would have to be disregarded.

[4] The parties dispute whether Varona's responsibilities included oversight of the front end of the Wal-Mart store in Monroe, New York. (P's 56.1 Resp. ¶ 15.) At her deposition, Varona testified that she was an assistant manager at Wal-Mart but that her title was "ACCM," which stands for Auto Care Center Manager. (O'Connor Aff. Ex. G at 7:11-16, 14:21-24.) Varona testified that the difference between an assistant manager and ACCM is that "Assistant Manager is over the store. I'm just over the Auto Care Center," (*id.* at 14:25-15:4), but later testified that as an assistant manager, it was her responsibility to manage the entire store, including the front entrances, (*id.* at 15:21-16:2). This fact dispute is not material and does not affect the outcome here.

accident, that mats had been placed in the vestibule, and that a floor blower was running. (*Id.* ¶ 17.) The surveillance video at 6:15:52 p.m. shows a plastic garbage bag being held by a maintenance worker blowing toward the vestibule's open door, (Surveillance Video at 6:15:52 PM), and the parties agree that this is evidence of the floor blower operating on the day Plaintiff fell, (P's 56.1 Resp. ¶ 27).

Defendant's video surveillance of the vestibule began at 4:48:57 p.m. (Surveillance Video at 4:48:57 PM.) At the start of the video, the doors through which Plaintiff and his son later entered are not fully closed because a small portion of the mat was in the doorframe. (*See, e.g.*, *id.* at 4:49:13 PM.) At 4:49:16 p.m., the mat is partially outside, (*id.* at 4:49:16 PM), and Plaintiff claims that the small portion in or perhaps beyond the doorframe was therefore exposed to the rain, but as Defendant notes, there is no evidence that it was raining at this time and Plaintiff testified that there was an awning or overhang outside this door, (Doc. 25 ("D's 56.1 Resp.") ¶ 43), which likely protected the mat from the rain. At 4:57:05 p.m., a Wal-Mart employee drove a cart-pushing machine from outside over the spot where Plaintiff would later fall. (Surveillance Video at 4:57:05 PM.)

At 4:57:32 p.m., a Wal-Mart employee, while looking at his cell phone, walked by the door and area where Plaintiff fell. (*Id.* at 4:57:32 PM.) At 5:03:53 p.m., an unidentified man pulled the mat so that the end that had been in the doorframe was now in the store. (*Id.* at 5:03:53 PM.) There is no evidence that this person was a Wal-Mart employee, although Plaintiff surmises that the man had just finished a shift because he was holding a "lunchbox." (D's 56.1 Resp. ¶ 49.) Plaintiff claims that when the man dragged the mat back inside, the man dragged the part of the mat which had been exposed to the rain across the store's floor. (*Id.* ¶ 50.) There is no evidence that it was raining at the time the man dragged the mat inside, and only a few

inches at most could have been beyond the door frame (and therefore would have been under the awning). At 5:39:45 p.m., a Wal-Mart employee walks into the frame and walks near the area where Plaintiff fell. (Surveillance Video at 5:39:45 PM.) At 5:40:23, an employee pushed a cart-pushing machine past the location where Plaintiff fell and out of the store. (*Id.* at 5:40:23 PM.) Plaintiff claims that the surveillance video shows him and other customers, after he fell, pointing out spots on the floor between 5:53:22 p.m. and 5:53:58 p.m., and that at 6:01:00 p.m., a Wal-Mart employee points to the floor. (D's 56.1 Resp. ¶¶ 60-62, 65.) But the individuals in the video make no obvious gestures to the floor and seem to refer generally to the area where Plaintiff fell. The accident area was not mopped or cleaned after Plaintiff fell. (P's 56.1 Resp. ¶ 24.)

The parties agree that that surveillance video shows that approximately 395 people walked in or out of the vestibule in the hour before the accident, 170 of whom used the same door as Plaintiff. (*Id.* ¶¶ 21-22.) At least fifteen people walked without incident over the area where Plaintiff's accident would later occur. (*Id.* ¶ 23.) Nobody slows down or has any difficulty ambulating. The parties also agree that in the hour following the accident, nearly 275 people traveled through the vestibule, about 180 of whom used the same door as the Plaintiff, and at least ten walked directly over the accident location without incident. (*Id.* ¶¶ 25-26.)

On November 15, 2017, Plaintiff filed this action in the New York Supreme Court in Orange County asserting a negligence claim. (O'Connor Aff. Ex. A at 7-14.)[5] The case was removed on March 20, 2018. (Doc. 1.) After discovery, Defendant made the instant motion. (Doc. 15.)

---

[5] Citations to O'Connor Aff. Ex. A refer to the Court's Electronic Case Filing ("ECF") system page number stamped at the top of each page.

## II. LEGAL STANDARD

In a slip-and-fall case, the federal summary judgment standard differs from that of New York. *See Decker v. Middletown Walmart Supercenter Store*, No. 15-CV-2886, 2017 WL 568761, at *4 (S.D.N.Y. Feb. 10, 2017). Per the *Erie* doctrine, although "New York law supplies the elements of [Ghali's] cause of action against [Wal-Mart], federal procedural law provides the standard for deciding whether [Wal-Mart] is entitled to summary judgment on that cause of action." *Casierra v. Target Corp.*, No. 09-CV-1301, 2010 WL 2793778, at *1 (E.D.N.Y. July 12, 2010); *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at

252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)-(3).

III. **DISCUSSION**

Under New York law, a plaintiff asserting a negligence claim must demonstrate "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (internal quotation marks omitted). In the context of premises liability and slip-and-fall cases, "the plaintiff must demonstrate that the landowner created the condition that caused the injury, or that

7

the landowner had actual or constructive notice of the condition." *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004); *see Gorecki v. Painted Pony Championship Rodeo, Inc.*, 6 F. App'x 103, 105 (2d Cir. 2001) (summary order) (proving breach of duty requires showing existence of dangerous condition and that defendant either created it or had actual or constructive notice of it).

There is abundant New York case law on tracked-in rainwater. A defendant is "not required to cover all of its floors with mats, nor to continuously mop up all moisture resulting from tracked-in rain." *Negron v. St. Patrick's Nursing Home*, 671 N.Y.S.2d 275, 276 (App. Div. 1998); *see Ruck v. Levittown Norse Assocs., LLC*, 812 N.Y.S.2d 567, 569 (App. Div. 2006) (owner "not obligated to provide a constant remedy to the problem of water being tracked into its store in rainy weather"). A store owner

> cannot prevent some water and mud being brought into an entranceway on a rainy day and he is not responsible for injuries caused thereby unless it is shown that the construction of the store is inherently dangerous or that he failed to use care to remedy conditions which had become dangerous, after actual or constructive notice of such conditions.

*Miller v. Gimbel Bros.*, 262 N.Y. 107, 108-09 (1933).

While in New York state court the Defendant would have to demonstrate that it neither created the condition nor had notice of it, in federal court the Defendant, as the moving party, may point to the absence of evidence that it caused or had notice of the hazard and thereby shift the burden to the Plaintiff to create an issue for trial through specific factual assertions. *Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 400-01 (E.D.N.Y. 2010). In other words, in federal court the absence of evidence at the summary judgment stage redounds to the detriment of the plaintiff, not the defendant.

8

Defendant contends that there is no genuine dispute over whether it (1) created, (2) had actual notice of, or (3) had constructive notice of the wet floor that allegedly caused Plaintiff to slip. (*See* Doc. 18 ("D's Mem.") at 5-7.)

### A. Creation

Defendant has pointed to the absence of evidence that it created the dangerous condition, thereby shifting the burden to Plaintiff to create an issue for trial through specific factual assertions. (D's Mem. at 5-6.) Under New York law, demonstrating that a defendant "created" a dangerous condition requires a showing of "some affirmative act" by the Defendant. *Gonzalez*, 299 F. Supp. 2d at 192; *see Henry v. Target Corp.*, No. 16-CV-8416, 2018 WL 3559084, at *3 (S.D.N.Y. July 24, 2018). Plaintiff posits two theories regarding Defendant's creation of the dangerous condition: (1) a Wal-Mart employee drove a cart-pushing machine from outside where it had been raining into the store, which created a wet area where Plaintiff slipped and fell; and (2) the mat placed in the vestibule was soaked with water after a portion of it was out in the rain, and a Wal-Mart employee brought the wet part of the mat into the store. (Doc. 23 ("P's Opp.") at 6-8.) The question here is whether a jury could reasonably infer from the evidence in the record that Defendant caused the floor to be wet with the rainwater from outside.

Plaintiff's first theory – that a Wal-Mart employee drove a cart-pushing machine from outside where it had been raining, which resulted in a wet floor upon which Plaintiff fell – is nothing more than speculation. The Wal-Mart employee drove the machine through the door and over the mat at 4:57:05 p.m., (Surveillance Video at 4:57:05 PM), but the evidence about what time it was raining that day is limited. Plaintiff's testimony that it was raining when he

9

picked up his son from school around 6:00 p.m., (Ghali Aff. ¶¶ 8-9),[6] is the earliest direct evidence of rain. Plaintiff offers circumstantial evidence that it had rained before the video started at 4:48:57 p.m.: Defendant's inclement weather policy included placing a mat and a floor blower in the store's vestibule, (P's 56.1 Resp. ¶ 16), and both items were present at 4:48:57 p.m., suggesting that Wal-Mart was acting pursuant to its inclement weather policy, (P's Opp. at 8).

Even assuming a reasonable factfinder could conclude it was raining either at the start of the video at 4:48:57 p.m. or at the time the Wal-Mart employee drove the cart-pushing machine indoors at 4:57:05 p.m., the timing of Plaintiff's theory does not add up. While the Wal-Mart employee drove the machine through the doors at 4:57:05 p.m., Plaintiff did not fall until 5:49:54 p.m. If the machine had deposited so much water in the store that Plaintiff would slip on it almost an hour later, in all likelihood someone else would have noticed the water or had difficulty navigating that area in the store. But the parties agree that the surveillance video shows that approximately 395 people walked in or out of the vestibule in the hour before the accident, 170 of whom used the same door as Plaintiff, and at least 15 people walked over the area where Plaintiff's accident would later occur without incident. (P's 56.1 Resp. ¶¶ 21-23.) Further, assuming it was raining, it is sheer speculation that water tracked in by the machine, as opposed to the footwear of any of those scores of customers, caused Plaintiff's fall. Accordingly, summary judgment is granted as to Plaintiff's theory regarding the cart-pushing machine creating the dangerous condition. Any other conclusion here would only reward Plaintiff's speculation. *See Major League Baseball Props.*, 542 F.3d at 310 ("A party opposing

---

[6] As noted above, Plaintiff's timing is obviously off because he fell at 5:49:54 p.m. (Surveillance Video at 5:49:54 PM.)

summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are . . . based on speculation.").

Plaintiff's second theory – that a Wal-Mart employee brought the wet mat indoors after it had been left in the rain – also depends on speculation. The man who pulled the end of the mat out of the doorframe is not wearing any identifiable Wal-Mart garb, and could have been a customer who observed that the doors were not closing fully and that the jam was easily fixed. His carrying a lunchbox hardly identifies him as an employee. But even assuming he was, Plaintiff's theory still fails.

There is no reason to believe that the smidgen of the mat that could have peeked beyond the door was saturated at the time the man pulled it inside. Even if it was raining at the time, that smidgen was under the awning. There is no evidence that the mat was wet or saturated when the unidentified man pulled the mat into the store. The surveillance video provides no such indication. And even if the end of the mat were soaked at 5:03:53 p.m., there is no basis to connect Plaintiff's fall forty-six minutes later to the water in the mat, as opposed to water tracked in (or even squeezed from the mat) by other customers. But even more devastating to Plaintiff's wet-mat theory is Plaintiff's testimony. At his deposition, Plaintiff was asked, "Was the mat at all involved in your accident?" and Plaintiff replied, "No." (Ghali Test. at 18:5-7.) Despite what Plaintiff now says in his affidavit – that water "squished beneath [his] feet and water leaked from it" as he stepped on the mat and that "[t]he mat seemed to have been saturated beyond the point that it could no longer retain water," (Ghali Aff. ¶ 13), no reasonable factfinder could find Plaintiff's mat theory possible when Plaintiff himself testified under oath that it was not.

Accordingly, there is no evidence, direct or circumstantial, from which a reasonable jury could infer that Defendant created the condition. *See Yearwood v. Cushman & Wakefield, Inc.*,

742 N.Y.S.2d 661, 662 (App. Div. 2002) (granting summary judgment where there was "no evidence that the defendant affirmatively created the wet condition in the lobby of the building, and it was not obligated to provide a constant remedy to the problem of water being tracked into a building in rainy weather").

### B. Actual Notice

"To prove actual notice, plaintiff must present proof that defendants were, in fact, aware of the dangerous condition." *Castellanos v. Target Dep't Stores, Inc.*, No. 12-CV-2775, 2013 WL 4017166, at *4 (S.D.N.Y. Aug. 7, 2013) (internal quotation marks omitted). "[I]f [Defendant] has either created the condition or has received reports or complaints [from others] about the condition," it is held to be aware of the condition. *Id.* (citing *Buskey v. Boston Mkt. Corp.*, No. 04-CV-2193, 2006 WL 2527826, at *6 (E.D.N.Y. Aug. 14, 2006)) (third alteration in original). Once again, Defendant has pointed to the absence of evidence that it had actual notice of the dangerous condition, thereby shifting the burden to Plaintiff to create an issue for trial. (D's Mem. at 6-7.) I have already rejected Plaintiff's argument that a reasonable jury could conclude that Defendant created the dangerous condition. Plaintiff offers three examples of how a reasonable jury could infer that Defendant's employees had actual notice of the dangerous condition: (1) at 4:57:05 p.m., a Wal-Mart employee drove a cart-pushing machine through the doors by which Plaintiff entered; (2) at 4:57:32 p.m., the same employee walks past the doors and mat; and (3) at 5:03:52, a supposed Wal-Mart employee pulled the mat inside the store. (P's Opp. at 9.)

Not only is there no evidence that any of those individuals noticed anything amiss, but there is no evidence that anything was in fact amiss at the times they walked past. T.G. said he

12

saw water on the floor when he and his father entered, (Doc. 21-2 ("T.G. Aff.") ¶ 7),[7] but that does not suggest it was there almost an hour before.[8] Further, there is no evidence in the record that indicates that Defendant had received complaints about the area before Plaintiff slipped. The parties agree that the surveillance video shows approximately 395 people walked in or out of the vestibule in the hour before the accident, 170 of whom used the same door as Plaintiff. (P's 56.1 Resp. ¶¶ 21-22.) The parties further agree that at least fifteen people walked without incident over the area where Plaintiff's accident would later occur. (*Id.* ¶ 23.) Putting aside the possibility that one of these people could have observed the alleged wet spots and reported them

---

[7] Defendant argues that T.G.'s affidavit should be disregarded because he was too young at the time of Plaintiff's accident to understand his promise to tell the truth, his affidavit contradicts other evidence, and Plaintiff never disclosed T.G. as a witness. (D's Reply at 2.) Defendant's first two arguments are unpersuasive. First, T.G.'s age alone is not sufficient to preclude his affidavit from consideration. Federal Rule of Evidence 601 provides: "Every person is competent to be a witness except as otherwise provided in these rules." Fed. R. Evid. 601. The Notes of the House Committee on the Judiciary state that one effect of Rule 601 is to abolish age as a ground for rendering a person incompetent. H.R. Rep. No. 93-650, *reprinted in* 1974 U.S.C.C.A.N. 7075, 7083. T.G., who was nine years old at the time he signed his affidavit, (T.G. Aff. ¶ 4), stated that he promised to tell the truth and that he knows the difference between the truth and a lie. *See Diaz v. Mazzuca,* No. 00-CV-4843, 2001 WL 170662, at *3 (S.D.N.Y. Feb. 21, 2001) ("The threshold determination in allowing a child to testify is whether the child is capable of understanding the oath."). Thus, T.G. is competent to testify. Second, Defendant's objection that T.G.'s affidavit contradicts other evidence is an objection to T.G.'s credibility, and "[s]uch a credibility determination is appropriate at a trial, but it exceeds the scope of a judge's authority in considering a summary judgment motion," *Napoli v. First Unum Life Ins. Co.*, 78 F. App'x. 787, 789 (2d Cir. 2003) (summary order). But Defendant's argument that T.G.'s affidavit should be precluded to avoid "sandbagging," (D's Reply at 7), has merit. I would be on solid ground were I to preclude T.G.'s affidavit from consideration given Plaintiff's failure to disclose T.G. as a witness. *See* Fed. R. Civ. P. 37(c)(1); *see also Grabin v. Marymount Manhattan Coll.*, 659 F. App'x 7, 10 (2d Cir. 2016) (summary order) ("A district court has wide discretion in punishing failure to conform to the rules of discovery.") (internal quotation marks omitted). In an abundance of caution, I will consider T.G.'s affidavit, although its inclusion in the record does not affect the outcome here.

[8] T.G. also says he and his father tried to wipe their feet on the mat but it was too wet. (T.G. Aff. ¶ 7.) That allegation is belied by the video, which shows no such thing. Plaintiff testified in his deposition that as he and his son entered the store, his son let go of his hand to go get a cart and Plaintiff followed, (Ghali Test at 17:9-17), but the video likewise does not show this.

13

if they had felt they were creating a hazard, at the very least those pedestrians could have tracked in the water after the Wal-Mart employees (and supposed Wal-Mart employee) entered the accident area at 4:57:05 p.m., 4:57:32 p.m., and 5:03:52 p.m.

Therefore, not only has Plaintiff failed to identify a Wal-Mart employee who had knowledge of the floor's condition before his fall, but he has also failed to offer circumstantial evidence that would allow a reasonable jury to infer that an employee had actual notice. *See Rouse v. Lex Real Assocs.*, 792 N.Y.S.2d 38, 39 (App. Div. 2005) (absent complaints, no actual notice of rainwater being tracked into lobby); *Garcia v. Delgado Travel Agency Inc.*, 771 N.Y.S.2d 646, 646 (App. Div. 2004) (water being tracked in does not constitute notice of dangerous condition); *Kovelsky v. City Univ. of N.Y.*, 634 N.Y.S.2d 1, 1 (App. Div. 1995) (no obligation to cover all floors with mats or continuously mop all moisture from tracked-in snow; "discovery of the wet floor was essentially contemporaneous with the accident itself"). Therefore, Plaintiff fails to raise a genuine dispute over Wal-Mart's actual notice. *See Henry*, 2018 WL 3559084, at *3.

### C. Constructive Notice

"To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. Am. Museum of Nat'l History,* 67 N.Y.2d 836, 837 (1986). "Constructive notice arises when the defendant should have known of the defect as a result of the condition's manifest nature and the length of time the condition was in existence prior to the accident." *Castellanos,* 2013 WL 4017166, at *5 (internal quotation marks and alteration omitted). "[I]n cases where the plaintiff is unable to establish how long the condition causing the accident existed prior to the accident, courts have entered summary judgment in favor of the

14

defendant." *Stephanides v. BJ's Wholesale Club, Inc.*, No. 12-CV-83, 2013 WL 1694901, at *5 (E.D.N.Y. Apr. 18, 2013) (collecting cases).

Defendant has, again, pointed to the absence of evidence that it had constructive notice of the dangerous condition. (D's Mem. at 7-9.) Plaintiff did not recall noticing any water on the ground before he slipped. (Ghali Test. at 19:11-14.) Although Plaintiff says in his affidavit that after he fell he saw "puddles" around the mats, (Ghali Aff. ¶ 15), he referred to these puddles as "spots" at his deposition and testified that he did not recall whether he saw the spots for the first time when he was on the ground, (Ghali Test. 21:11-22:5). T.G. said he saw water "all over the floor" as he entered the store. (T.G. Aff. ¶ 7.) Thus, despite the fact that the video shows no water and there was apparently nothing anybody thought needed to be cleaned up following Plaintiff's fall, this testimony suffices to create a fact issue as to whether the floor was wet. But it says nothing about how long it had been wet. "There is no evidence showing how long the wet condition existed in the first instance" and thus "no proof that the condition was visible and apparent so as to constitute constructive notice." *Fellner v. Aeropostale, Inc.*, 52 N.Y.S.3d 628, 629 (App. Div. 2017) (internal quotation marks omitted); (D's Mem. at 7-9). Even "[t]he fact that it had been raining for several hours prior to the accident does not, without more, permit an inference of constructive notice," *O'Rourke v. Williamson, Picket, Gross, Inc.*, 688 N.Y.S.2d 528, 529 (App. Div. 1999), and here the record is barren as to how long it had been raining. Absent evidence as to how long the floor had been wet, Plaintiff cannot prevail. *See Gibbs v. Port Auth. of N.Y.*, 794 N.Y.S.2d 320, 322-23 (App. Div. 2005).

Further, Plaintiff must provide evidence from which a jury could infer Defendant's "constructive notice of the specific condition that allegedly caused plaintiff's injuries," *Carter v. N.Y.C. Hous. Auth.*, 956 N.Y.S.2d 26, 27 (App. Div. 2012), but neither Plaintiff nor his son

purport to have seen the particular water on which Plaintiff allegedly slipped, *see Arrufat v. City of N.Y.*, 846 N.Y.S.2d 290, 291 (App. Div. 2007) ("[P]laintiff's evidence was not specific enough to raise any triable issues of fact as to whether the defendants had or should have had notice of the particular wetness that allegedly caused the plaintiff to fall. . . . Rather, it merely established a general awareness that the floors may have been wet.") (citations omitted). General awareness that water accumulates on a floor in rainy weather "would not be sufficient to establish constructive notice of the particular wet condition . . . which caused the plaintiff to slip." *Yearwood*, 742 N.Y.S.2d at 661. "In the absence of proof as to how long this puddle of water was on the floor, there is no evidence to permit an inference that the defendant had constructive notice of the condition on which the plaintiff fell." *Id.* Plaintiff likewise cannot point to anything in the record to show that Wal-Mart failed to follow its protocol for detecting and cleaning up spills.[9] In fact, even after Plaintiff fell, he and customers gestured toward the area, and a Wal-Mart employee walked over to it, (Surveillance Video at 6:01:00 PM), the accident area was not mopped or cleaned, (P's 56.1 Resp. ¶ 24), suggesting that no water was visible. Because Plaintiff proffers no evidence that the water on which he fell was visible or apparent for a sufficient time before the fall, Plaintiff has failed to meet his burden of presenting

---

[9] In Plaintiff's pre-motion letter dated September 21, 2018, he argued that "[t]he Walmart greeter's presence in the area immediately prior to the fall provides sufficient notice of the dangerous condition." (Doc. 13.) Varona testified that she did not know whether on December 1, 2015, Wal-Mart's policy was to station a "greeter" or security officer at the front entrance of Wal-Mart stores. (Doc. 21 Ex. G at 65:10-25.) She explained that Wal-Mart's current policy (in effect at the date of her deposition on June 12, 2018) does station a "customer host" at the entrance of Wal-Mart stores. (*Id.* at 66:2-12.) When Plaintiff's counsel said he would call for production of the name of the customer host working on December 1, 2015, Varona said that the position did not exist then. (*Id.* at 66:13-17.) Plaintiff must have abandoned his greeter argument because there is no mention of it in his papers and no evidence about a greeter or customer host in the record. The surveillance video – which captures the front area of the store at a wide angle – does not show any such Wal-Mart employee stationed at the front of the store.

16

facts from which a jury could conclude that Defendant had constructive notice of the dangerous condition.

Plaintiff's reliance on *Urrutia v. Target Corp.*, 681 F. App'x 102 (2d Cir. 2017) (summary order), is unavailing. In *Urrutia*, the plaintiff testified that shortly after entering a Target store, she saw an area of clear liquid on the floor, mentioned the liquid to her son without telling any Target employees, and then, forty-five minutes later, slipped in the same place she had observed the liquid. *Id.* at 103. In vacating the district court's grant of summary judgment, the panel held that because the plaintiff "saw clear liquid on the floor approximately forty-five minutes before she fell, and . . . slipped in clear liquid in the same spot, a jury could reasonably conclude that the clear liquid was visible and apparent." *Id.* at 104. Here, there is no evidence that anyone observed the hazard before Plaintiff slipped. Therefore, Plaintiff's reliance on *Urrutia* is unpersuasive.

Plaintiff also cites *Torres v. United States*, No. 09-CV-5092, 2010 WL 5422547 (S.D.N.Y. Dec. 23, 2010), but that case is also unhelpful. Although the *Torres* plaintiff survived the government's first motion for summary judgment – because it appeared that the area where she slipped on a melted sticky substance had not been inspected for hours, *see id.* at *4 – the court granted the government's renewed motion for summary judgment following additional discovery, *see Torres v. United States*, No. 09-CV-5092, 2011 WL 1432035, at *4 (S.D.N.Y. Apr. 11, 2011). Because the renewed motion showed that the area where the accident occurred had been inspected approximately twenty minutes earlier and there was no substance visible at the time of the inspection, the condition of the substance (which suggested the spill was not recent) was insufficient to show that the government had constructive notice of the defect under New York law. *See id.* at *3-4 (collecting cases). Plaintiff does not grapple with the subsequent

decision, which undercuts Plaintiff's suggestion, (P's Opp. at 13), that his observation of footprints in the puddles or spots of water, (Ghali Aff. ¶ 16), permits an inference that the water on which he slipped was there long enough to constitute constructive notice. It is true that in *Torres* there was evidence of inspection which is lacking here, but in that case, the fact that the condition of the substance suggested that it had been present for a long period did not suffice to create a fact issue under a line of cases in which "New York courts have consistently held that plaintiffs' description[s] of a dangerous substance alone are not sufficient to establish the defendants' constructive notice." *Torres*, 2011 WL 1432035, at *3. On the first motion, the plaintiff proffered both her description and evidence of a lack of inspection, but once she could only proffer her description, summary judgment for the defendant was appropriate. *Id.* at *3-4.

Here, similarly, Plaintiff's description of the footprints in the puddles (not even necessarily the one on which he allegedly slipped) does not suffice to create an inference of constructive knowledge, particularly given the level of foot traffic in the store. *See Gluskin v. Nat'l R.R. Passenger Corp.*, No. 92-CV-3814, 1994 WL 285483, at *2 (S.D.N.Y. June 28, 1994) (plaintiff's affidavit that water was "dirty and brown with muddy footprints leading into and out of it is not sufficient to create a case of constructive notice"; "With the heavy foot traffic about which Mrs. Gluskin testified, such dirt and footprints could accumulate in a moment."); *Keum Choi v. Olympia & York Water St. Co.*, 718 N.Y.S.2d 42, 42 (App. Div. 2000) (summary judgment for defendant appropriate where plaintiff had seen footprints on floor because, in absence of evidence as to how long water had been present, "quite possible that any water on the floor had been tracked into the building by individuals immediately preceding plaintiff" and "Defendants had no obligation to provide a constant remedy for such a problem").

18

The record here simply does permit an inference of constructive notice, given the absence of evidence as to the visibility of the hazard or the length of time it was present. *See Nussbaum v. Metro-North Commuter R.R.*, 994 F. Supp. 2d 483, 491 (S.D.N.Y. 2014) ("New York courts have long held that a defendant is not required to constantly remove moisture from the ground that has been tracked into a building lobby, subway car, train car, or other similar location due to precipitation."); *see also Solazzo v. N.Y.C. Transit Auth.*, 6 N.Y.3d 734, 735 (2005) ("A property owner will not be held liable in negligence for a plaintiff's injuries sustained as the result of [a slippery] condition occurring during an ongoing storm or for a reasonable time thereafter."); *Marte v. N.Y.C. Transit Auth.*, 715 N.Y.S.2d 704, 706 (App. Div. 2000) ("The puddle could have occurred as a result of water dripping from the clothing or umbrellas of other passengers who had boarded the subway car immediately before [the plaintiff] boarded it."); *Alatief v. N.Y.C. Transit Auth.*, 681 N.Y.S.2d 562, 563 (App. Div. 1998) ("[I]t was undisputed that it was still raining at the time of the occurrence and, accordingly, the accumulation could have occurred as a result of water dripping from the clothing or umbrellas of other passengers who had boarded the subway car immediately prior to the boarding by the injured plaintiff.").

## IV. CONCLUSION

"Under *Celotex*, the burden on the moving party may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case. Because [D]efendant has done so here," and Plaintiff has not in response presented evidence raising genuine issues of material fact, summary judgment is GRANTED. *See Tingling v. Great Atl. & Pac. Tea Co.*, No. 02-CV-4196, 2003 WL 22973452, at *2 (S.D.N.Y. Dec. 17, 2003) (citation and internal

quotation marks omitted).  The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 15), enter judgment for Defendant, and close the case.

**SO ORDERED.**

Dated: April 18, 2019
      White Plains, New York

                                                          _____
                                                          CATHY SEIBEL, U.S.D.J.